*See Concurring Opinion*

Filed 8/2/22  In re M.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.M.,<br><br>Defendant and Appellant. | E078535<br><br>(Super. Ct. Nos. J285552 & J285553)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Conditionally reversed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant, J.M. (Father) appeals from the juvenile court's order terminating his parental rights as to his seven-year-old son M.M. and nine-year-old daughter S.M.[1] Father's sole contention on appeal is that the order must be reversed because plaintiff and respondent, the San Bernardino County Children and Family Services (the Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and with Welfare and Institutions Code[2] section 224 et seq. For the reasons explained herein, we agree and therefore conditionally reverse and remand with directions that the Department complete its inquiry.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Department on June 10, 2020, after it received a referral alleging general neglect to the children by Mother. The allegation noted that Mother was arrested after violating her probation for having methamphetamine and drug paraphernalia in her home. As Mother was being arrested, contact was made with L.B., a family friend, to inquire about her ability to take the children into her care.

---

[1] B.G. (Mother) is not a party to this appeal.

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

Mother referred to L.B. as the maternal grandmother. However, L.B. indicated that she was not related to Mother but instead cared for Mother after the maternal grandmother had passed away. L.B. provided the Department with contact information for the maternal uncle, D.G.

After the social worker contacted the maternal uncle for emergency placement of the children, the Department determined that his home would be assessed through the Resource Family Approval process. At the time of Mother's arrest, Father was incarcerated in state prison. The children were therefore placed into foster care.

On June 12, 2020, the Department filed petitions on behalf of the children pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provisions for support) based on allegations related to the parents' substance abuse, criminal history and incarceration. As to ICWA, the petitions noted that the Department had made an inquiry of the maternal aunt R.G. on January 10, 2020, and that the inquiry gave no reason to believe the children were Indian children. The Department also noted in its detention report that the ICWA "does not apply."

At a further detention hearing on June 16, 2020, Mother was present in court, and the court inquired of Mother whether she or Father had any Native American Indian ancestry. Mother denied any Indian ancestry and also indicated that Father had no Indian ancestry. At the court's request, Mother completed a "PARENT: Family Find and ICWA Inquiry" (Inquiry) form listing contact information for the maternal uncle D.G. and his wife (maternal aunt R.G.) as potential placement resources. Mother also listed

3

other family friends as potential placement options for the children and indicated that she had no Native American ancestry. The juvenile court thereafter formally detained the children and maintained them in foster care.

On June 16, 2021, Mother filed a "Parental Notification of Indian Status" (ICWA-020) form and checked the box indicating, "I have no Indian ancestry as far as I know."

Father submitted his Inquiry form on July 17, 2020 and noted that he did not have any Native American ancestry. He listed a paternal aunt, N.M., and a family friend, B.B. as possible placement for the children. Father provided contact information for B.B. and did not provide contact information for the paternal aunt but indicated that her number could be obtained from B.B. Father filed his ICWA-020 form on this same day and checked the box indicating, "I have no Indian ancestry as far as I know."

In its jurisdictional/dispositional report, the Department noted that the ICWA did not apply and recommended that the juvenile court find the allegations in the petitions true. The Department also recommended that reunification services be provided to Mother and no reunification services to Father pursuant to section 361.5, subdivision (e). A background check of Mother revealed that she had been removed from the maternal grandparents as a child due to concerns of sexual abuse by the maternal grandfather and due to concerns of parental neglect by the maternal grandmother. Mother was eventually placed in a legal guardianship with an adult half-sibling, A.G. A background check of Father also revealed a prior child welfare history based upon concerns that Father, who was then 12 years old, was molesting his developmentally delayed mother (the paternal

4

grandmother, E.M.). At that time, the Department had spoken to the paternal great-grandmother, D.L., regarding concerns with Father.

The jurisdictional/dispositional hearing was held on July 17, 2021. At that time, Father was present in custody, and the juvenile court inquired of Father as to his Native American ancestry. Father stated that he was not aware of any Indian ancestry. The court found most of the allegations true in the petitions and declared the children dependents of the court. The court found that the children did not come under ICWA and ordered reunification services for Mother.

Mother initially engaged in her case plan and regularly visited the children. However, by the 12-month-review hearing, the Department recommended that Mother's reunification services be terminated. Mother was inconsistent in attending her services and had tested positive for methamphetamines or failed to test numerous times. The Department noted that ICWA did not apply and that contact had been made with the paternal grandfather but that he was unable to have the children in his care.

At the July 22, 2021 12-month-review hearing, the juvenile court terminated Mother's reunification services and set a section 366.26 hearing.

On February 3, 2022, at the section 366.26 hearing, the juvenile court found the children adoptable and that no exception to the statutory preference for adoption applied. The court ordered adoption as the permanent plan for the children and terminated parental rights. Father timely appealed.

5

III.

DISCUSSION

Father contends that the Department failed to conduct a sufficient inquiry as to whether ICWA applied to his children, and thus the juvenile court lacked sufficient evidence upon which to make its ICWA finding. He requests the matter be remanded with instructions the Department fully comply with the inquiry and notice provisions of the ICWA.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[ ] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; see *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 [California law "incorporates and enhances ICWA's requirements"].) Both ICWA and California law define an "'Indian child'" as any unmarried person who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a), (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

6

Noncompliance with ICWA inquiry or notice requirements may be raised by either parent on appeal, even if the parent did not appeal an earlier order finding the ICWA inapplicable, and even if the appealed order did not contain an express ICWA finding. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 9-15 [continuing duty under ICWA]; *In re A.M.* (2020) 47 Cal.App.5th 303, 314, fn. 4 [absence of express finding does not diminish requirement of a current ICWA finding]; *In re A.W.* (2019) 38 Cal.App.5th 655, 664-665 [a non-Indian parent has standing to raise an ICWA violation on appeal].) Because Father is appealing from the February 2022 order terminating his parental rights, and the juvenile court has a continuing duty to determine whether ICWA applies, we apply the federal and state statutes in effect on the date of the hearing. (§§ 224.2, 224.3 [Stats. 2018, ch. 833, §§ 4-7]; *In re A.M.*, *supra*, at p. 321.)

We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)

The court and the Department have an affirmative and continuing duty under the ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7-8.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2018)) and sections 224.2 and 224.3. As discussed in *In*

7

*re Austin J.* (2020) 47 Cal.App.5th 870, 883 and *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1049 (*D.S.*), California law imposes a duty of initial inquiry in every case, and a duty of further inquiry when there is reason to believe a child may be an Indian child under the ICWA.

The Department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry also includes requiring each party to complete California Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there is reason to believe that an Indian child is involved in a proceeding, *further* inquiry is required. (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 883; *D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049; *In re A.M.*, *supra*, 47 Cal.App.5th at pp. 321-323.) The law requires further inquiry only "'when "the court, social worker, or probation officer has reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), 'may be involved'] in a proceeding. . . .""" (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.) "'When that ["reason to believe"] threshold is reached, the requisite "further inquiry" "includes: (1) interviewing the parents and extended family members; (2)

8

contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe."'" (*Ibid.*) Thus, there are two types of inquiry the social service agency is required to conduct: an initial inquiry, which is always required, and a further inquiry, which is required only when the agency has reason to believe an Indian child is or may be involved in the proceeding.

ICWA notice is required when there is "reason to know" a child is an Indian child. There is "reason to know" a child is an Indian child if "(1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child; [¶] (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child; [¶] (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child; [¶] (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village; [¶] (5) The court is informed that the child is or has been a ward of a Tribal court; or [¶] (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe." (25 C.F.R. § 23.107(c); accord, § 224.2, subd. (d).)

Father contends that there was insufficient evidence to show the Department fully complied with its initial duty under the ICWA because the Department, despite

knowledge of the parents' relatives, made no effort to contact any of the relatives to inquire about Indian ancestry as required by section 224.2, subdivision (b). We agree. There is no evidence in the record to suggest that the Department inquired of either the paternal or maternal relatives of their Indian ancestry.

Father and Mother's parents and siblings are among those "'extended family members'" whom the Department must interview, if possible, to gather information to determine whether the proceeding involves an Indian child. (See Cal. Rules of Court, rule 5.481(a)(4)(A); 25 U.S.C. § 1903(2) [defining "'extended family member'" to include "the Indian child's grandparent, aunt or uncle"].) The Department must make a good faith attempt to locate and interview extended family members who can reasonably be expected to have information concerning a child's membership status or eligibility. (*D.S.*, *supra*, 46 Cal.App.5th at pp.1052-1053; see *In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 652.) However, the Department "is not required to 'cast about' for information or pursue unproductive investigative leads. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199.)" (*D.S.*, *supra*, at p. 1053.)

The record here does not document that the Department interviewed the children's grandparents, aunts or uncles about their Indian ancestry. (*In re K.R.* (2018) 20 Cal.App.5th 701, 708-710 [agency cannot rely on absence of documentation to argue that appellant's claim of ICWA error must fail on appeal].) The social services agency is obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status."

10

(*Id.* at p. 709.) The juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*Ibid.*) Because the Department failed to document the inquiry efforts required under section 224.2, there is insufficient evidence to support the court's determination that ICWA was inapplicable to the case. (See § 224.2, subds. (b), (c), (e); *In re K.R.*, *supra*, at p. 709 ["[O]nce there is sufficient information to believe that the children might be Indian children within the meaning of ICWA and the California statutes, 'responsibility for compliance' with those statutes 'falls squarely and affirmatively' on *both* the social services agency and the court."]; accord, *In re Darian R.* (2022) 75 Cal.App.5th 502, 509.)

Nonetheless, when an appeal concerns "the *agency's* duty of initial inquiry, only state law is involved. Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.) Currently, Courts of Appeal have applied different standards of harmless error to defects occurring at the initial inquiry phase, even within the same appellate court, like this court. Several courts have reversed for defective initial inquiries whenever there is an "absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry . . . requirements." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484; see, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 203, 206-207; *In re H.V.* (2022) 75 Cal.App.5th 433, 438, fn. 4.) Other courts have deemed any defect harmless unless the parent makes an offer of proof or other assertion of Indian heritage

on appeal. (See, e.g., *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1070-1073; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1389-1390; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.) Nonetheless, other courts have treated deficient inquiry to be harmless unless, based on the appellate record, it is reasonably probable that missing information "likely to bear meaningfully upon whether the child is an Indian child" could reasonably be obtained by the welfare agency (e.g., *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744, or unless the record contains information "suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA" (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779).

Recently, our colleagues in the Second District, Division Two, in *Dezi C.*, *supra*, 79 Cal.App.5th 769, explained the three different harmless error analysis rules, while creating a fourth "reason to believe" rule, as follows: "At this point in time, the California courts have staked out three different rules for assessing whether a defective initial inquiry is harmless. These rules exist along a 'continuum.' (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011.) The rule at one end of this continuum is one that mandates reversal: If the Department's initial inquiry is deficient, that defect necessarily infects the juvenile court's ICWA finding and reversal is automatic and required (the 'automatic reversal rule'). (*In re J.C.* (2022) 77 Cal.App.5th 70, 80-82; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432-437; *In re A.R.*[, *supra*,] 77 Cal.App.5th [at p.] 205; *In re H.V.*[, *supra*,] 75 Cal.App.5th [at p.] 438; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; accord, *In re N.G.*[, *supra*,] 27 Cal.App.5th [at pp.] 484-485; *In re K.R.* (2018) 20 Cal.App.5th 701,

708-709.)  Under this test, reversal is required no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court.  (*Antonio R.*, *supra*, at p. 435.)  The rule at the other end of the continuum is one that presumptively favors affirmance:  If the Department's initial inquiry is deficient, that defect will be treated as harmless unless the parent comes forward with a proffer on appeal as to why further inquiry would lead to a different ICWA finding (the 'presumptive affirmance rule').  (*In re A.C.*[, *supra*,] 65 Cal.App.5th [at pp.] 1065, 1071; accord, *In re Rebecca R.*[, *supra*,] 143 Cal.App.4th [at pp.] 1430-1431.)  The third rule lies in between:  If the Department's initial inquiry is deficient, that defect is harmless unless 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child' and that 'the probability of obtaining meaningful information is reasonable' ('the readily obtainable information rule').  (*In re Benjamin M.*[, *supra*,] 70 Cal.App.5th [at p.] 744; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509-510; *In re S.S.* (2022) 75 Cal.App.5th 575, 581-583; [*In re A.C.*, *supra*, 75 Cal.App.5th] at p. 1015.)"  (*Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777-778.)

In purposing the fourth "reason to believe" rule, the *Dezi C.* court stated:  "In our view, an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding.  For this purpose, the 'record' includes both the record of proceedings in the

13

juvenile court and any proffer the appealing parent makes on appeal. To illustrate, a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage at all [citation]; or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed [citation]." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, fn. omitted, italics omitted.)

Here, though Father correctly contends the Department failed in its duty to interview his and Mother's extended relatives, we must still determine whether this error prejudiced Father. We conclude it did. While we acknowledge the four diverse harmless error analysis rules, including three different rules from this court, out of an abundance of caution we cannot say the error was harmless for several reasons. First, there is no question the information the extended relatives, especially the paternal grandfather, paternal aunt and maternal uncle, had was readily obtainable and likely to bear on the children's Indian status. The Department had contacted the paternal grandfather and maternal uncle concerning placement of the children. As such, the Department could have easily interviewed them concerning the children's Indian status. Although the record indicates the Department inquired of a maternal aunt (R.G., who appears to be the maternal uncle's wife), there is no indication the Department inquired of the maternal uncle or the paternal grandfather concerning the children's Indian status.

14

Second, the record indicates Mother was placed in legal guardianship with an adult half-sibling as a child. Thus, there is no indication in the record to suggest Mother was fully informed of her Indian heritage. In addition, Mother's self-reporting of no Indian heritage cannot wholly be deemed as a fact or adequate information considering her lengthy substance abuse history. Furthermore, Father was incarcerated during the proceedings, and there is no evidence to suggest he was able to contact his relatives to provide further information or that he was fully informed of his Indian heritage.

In short, there is no good excuse for why the Department did not seek this information, especially from the paternal grandfather and maternal uncle, and good reason to believe the information would be relevant. Therefore, the Department's failure to obtain the information was prejudicial.

The Department argues the error was not prejudicial because both parents "unequivocally denied" having any Indian ancestry. However, section 224.2, subdivision (b), "requires the [d]epartment to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child," and nothing "relieves the [d]epartment of its broad duty to seek that information . . . simply because a parent states on the ICWA-020 form . . . 'I have no Indian ancestry as far as I know.'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554.) "Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid*.) Moreover, the Department's "position ignores the express obligation that section 224.2, subdivision (b), imposes on the [d]epartment to

15

inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.)

Nor could we reasonably infer Father and Mother asked their family members themselves before denying their Indian ancestry, as there is no evidence suggesting they did or did not. Absent some evidence suggesting Father and Mother already asked their family members, or that the information the family members have is unlikely to meaningfully bear on the children's Indian status (one way or the other), the Department is obligated to speak to them precisely because we cannot impute knowledge one family member has about their family to all family members. Moreover, it is not the parent's duty to ask their relatives for this information, it is the Department's. Without more, the Department cannot rely on the parent's denials assuming they did the work for them— they must do the investigation themselves.

For these reasons, "[w]here the [d]epartment fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.) Accordingly, we conditionally reverse the order terminating parental rights to permit the Department to complete its initial inquiry.

16

IV.

DISPOSITION

We conditionally reverse the order terminating parental rights. We remand the matter to the juvenile court with directions the Department comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3 (and, if applicable, the notice provisions as well) by interviewing the paternal grandfather, the paternal aunt, the maternal uncle, and any other extended paternal and maternal family member with information likely to bear meaningfully upon whether the children are Indian children and to file documentation of its efforts. If, after completing the initial inquiry, neither the Department nor the juvenile court has reason to believe or to know the children are Indian children, the court shall reinstate the order terminating parental rights. If the Department or the court has reason to believe the children are Indian children, the court shall proceed accordingly. In all other respects, the juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

I concur:

McKINSTER
J.

17

[E078535, *In re M.M.; CFS v. J.M.*]

Ramirez, P. J., Concurring.

I concur completely in the court's opinion. However, because the court declines

to follow *In re A.C.* (2021) 65 Cal.App.5th 1060 (*A.C.*) — and because I was the author

of *A.C.* — I feel the need to defend myself against any charge of inconsistency.

In 2006, *In re Rebecca R.* (2006) 143 Cal.App.4th 1426 [Fourth Dist., Div. Two]

(*Rebecca R.*) held that an agency's asserted failure to carry out its duty to inquire was

harmless where the parent did not "make an affirmative representation of Indian heritage"

on appeal. (*Id.* at pp. 1430-1431.)

When we decided *A.C.*, *Rebecca R.* was stare decisis in our division. What's

more, three of our sister courts had followed it. (*In re Noreen G.* (2010) 181 Cal.App.4th

1359, 1388 [First Dist., Div. One]; *In re H.B.* (2008) 161 Cal.App.4th 115, 121 [Second

Dist., Div. Seven]; *In re N.E.* (2008) 160 Cal.App.4th 766, 769-771 [Fourth Dist., Div.

Three].) Only one case had come to a different conclusion, but it was decided before

*Rebecca R.,* and it resolved the issue in a footnote, with almost no analysis. (*In re J.N.*

(2006) 138 Cal.App.4th 450, 461 & 461, fn. 10 [Fifth Dist.].) Rules of precedent familiar

to any first-year law student counselled that we follow *Rebecca R.*

Since then, however, it is as if *A.C.* declared, "Let a thousand flowers bloom." As

the lead opinion ably recounts, the near-unanimity that prevailed before *A.C.* has

shattered into a welter of conflicting standards. In this division alone, *In re Benjamin M.*

(2021) 70 Cal.App.5th 735 [Fourth Dist., Div. Two] disagreed with *A.C.* and thus,

1

implicitly, with *Rebecca R.*  As a result, only a year after *A.C.* was decided, it is no longer stare decisis, and it is no longer supported by stare decisis.

There is a reason for this breakdown of consensus:  The issue of when, if ever, an agency's failure to inquire can be deemed harmless pits the interests of parents and of Indian tribes squarely against the interests of abused and neglected children (in permanency) and the interests of the judicial system itself (in efficiency and finality).  As a matter of both law and policy, it is not clear where to draw the line between them.

Wisely, the lead opinion does not attempt to pick and choose any single one of the conflicting standards.  At this point, I suspect that that task will be up to our Supreme Court.  It decides the minimum necessary to resolve the appeal, namely not to follow *A.C.*  I join in that decision, because *A.C.* has had its chance to persuade and has not done so (although it may have one last chance if and when the Supreme Court reaches the issue).

RAMIREZ           

P. J.
